UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **CORE PRIMARY CARE, PLLC,** a Texas professional limited liability company,<br><br>  Plaintiff,<br><br>v.<br><br>**CYNOSURE, INC.,** a Delaware corporation,<br><br>  Defendant. | CIVIL ACTION NO. 4:23-cv-02275 |

## COMPLAINT

Plaintiff Core Primary Care, PLLC ("Core Primary") alleges as follows:

## PARTIES

1. Plaintiff Core Primary is a Texas professional limited liability company taxed as a C-corporation with its principal place of business in Houston, Texas, and whose members are citizens of Texas.

2. Defendant CynoSure, Inc. ("CynoSure") is a corporation formed under the laws of the State of Delaware, with its principal place of business in Westford, Massachusetts.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a). The citizenship of the parties is diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs. Further, this Court has personal jurisdiction over CynoSure because CynoSure purposefully availed itself of the privileges and benefits of conducting business in Texas.

4.      Venue is proper in the United States District Court for the Southern District of Texas, Houston Division pursuant to 28 U.S.C. § 1391 because a substantial portion of the events or omissions giving rise to the claims occurred here.  *See also In re Great Lakes Dredge*, 251 S.W.3d 68 (Tx. Ct. App. 2008) (holding under Texas law, venue selection clauses are not enforceable unless the contract involves a "major transaction," or if the venue-selection clause is expressly made enforceable by another Texas statute.)

## **FACTS**

5.      Core Primary provides family and internal medicine services in Houston and Sugar Land, Texas.  Core Primary's principal place of business is in Houston, Texas.  Dr. Alejandro Mora is a Core Primary principal, provides medical services to Core Primary's patients, and resides in Houston, Texas.

6.      CynoSure is a developer and manufacturer of lasers and light-based technology for medical and aesthetic treatment applications.  On information and belief, CynoSure sells these lasers and light-based technologies to physicians and medical practices across the United States.

7.      One of CynoSure's products, the PicoSure Picosecond Aesthetic Workstation ("PicoSure"), is a laser created, marketed, and advertised for tattoo removal and benign pigmented lesions.

8.      CynoSure directly markets and advertises its products, including PicoSure, through websites, YouTube video clips, marketing materials, brochures, and representations made by CynoSure sales representatives that call on dermatology clinics and medical offices across the United States and that present at various trade shows, conferences, and in-person sales presentations.

9. In an effort to market its products to providers, including the PicoSure product, CynoSure organized an event called the "Aesthetic Exchange" in Houston, Texas. According to CynoSure's social media advertisement on Instagram, CynoSure described the event as follows:



10. The Aesthetic Exchange event took place on June 26 and 27, 2021.

11. Dr. Mora, on behalf of Core Primary, attended both days of the event, where he met Kyle Weisensee, a Regional Sales Director, who was employed at the time by CynoSure.

12. On June 27, 2021, Mr. Weisensee approached Dr. Mora. Mr. Weisensee stated that based on Core Primary's interest in CynoSure's technologies (Core Primary already owned two different CynoSure machines), he believed an additional PicoSure machine would fit in well within Core Primary's existing suite of CynoSure equipment.

13. In response to Mr. Weisensee's solicitation, Dr. Mora stated that although he was interested in purchasing an additional PicoSure machine for Core Primary, the purchase price of the PicoSure machine was prohibitive.

14. Mr. Weisensee and Dr. Mora continued to discuss and negotiate the potential purchase of the PicoSure machine.

15. As part of the negotiations, Mr. Weisensee stated that CynoSure wanted to make the purchase of the PicoSure machine "as low risk as possible" for Core Primary. Mr. Weisensee then offered the PicoSure machine at a discount and with a 6-month deferred payment plan.

16. In response, Dr. Mora stated that although he appreciated the discount and the deferred payment plan, Core Primary was still not in a position to buy a PicoSure machine because of the machine's high purchase price.

17. On information and belief, realizing that he may lose a potential sale because of the purchase price, Mr. Weisensee then attempted to entice Core Primary to purchase the PicoSure machine by stating that if after one year of use of the PicoSure machine, Core Primary decided that it did not want the machine, then CynoSure would make Core Primary whole again by selling the machine. Specifically, Mr. Weisensee stated that CynoSure would agree to sell the PicoSure machine, for Core Primary's benefit, for the remaining amount that owed on the machine at that time.

18. As a result of Mr. Weisensee's representation, Dr. Mora agreed to purchase the PicoSure machine on behalf of Core Primary.

19. Dr. Mora and Mr. Weisensee then agreed that Mr. Weisensee would email Dr. Mora the relevant agreements and purchase orders later that day.

20. The next day, June 28, 2021, Mr. Weisensee emailed Dr. Mora. The title of his email was "12 Month Out Letter" and it attached an "agreement with the clause we discussed." Mr. Weisensee was referring to the terms he offered in Paragraph 17.

21. In response, and after reviewing the agreement Mr. Weisensee prepared, Dr. Mora emailed Mr. Weisensee on June 28, 2021 and voiced his concern with the fact that the agreement did not reflect what they had in fact agreed upon.

22. In a further effort to close the deal, Mr. Weisensee stated in an email on June 28, 2021 that he would "change the verbiage [of the agreement] and will resend over."

23. Later that same day, June 28, 2021, Mr. Weisensee emailed an updated version of the agreement to Dr. Mora and stated: "Here you go. Also, if there is any other language that makes you feel any better, please revise and resend. I am wanting this to be a win/win and that is what we discussed. If not, please let me know and I will PDF, sign and send over."

24. On the next day, June 29, 2021, Dr. Mora responded to Mr. Weisensee's email. Dr. Mora made a few additional revisions to the agreement "that would fully ease [his] concerns in moving forward with the deal."

25. On June 30, 2021, Mr. Weisensee accepted Dr. Mora's revisions to the agreement and sent two documents for Dr. Mora's signature: (1) the updated agreement titled "Contractual Agreement" signed by Mr. Weisensee (on behalf of CynoSure) on June 29, 2021, and a "Customer Purchase Agreement" signed by Mr. Weisensee (on behalf of CynoSure) on June 29, 2021.

26. On June 30, 2021, Dr. Mora signed the "Contractual Agreement" and the "Customer Purchase Agreement" and emailed the signed copies back to Mr. Weisensee.

27. In its entirety, the signed Contractual Agreement states:

**Contractual Agreement**

This is an Agreement, between Cynosure Inc. ("Owner") and Core Primary Care(the "Recipient"), in which the owner agrees to uphold the following terms and conditions:

1) The owner agrees that after 12 months of full payments, if the Recipient has not been able to justify the return on the cost of the PicoSure laser, that the Owner will assist in the selling of the laser within 30 to 60 days of the date acknowledged by Recipient. The Owner will sell the device to another provider or broker for the amount that is owed on the principal balance supplied to the Owner by Financial Partners. The funds from the sale of the device will then be used to cancel out the financial obligations the Recipient has outstanding with the Financial Partners.

Any additions or modifications to this Agreement must be made in writing and signed by both parties.

28.     The Contractual Agreement appears on CynoSure letterhead, all of Mr. Weisensee's written communications related to the PicoSure machine and contracts originated from kyle.weisensee@cynosure.com, and Core Primary paid CynoSure in consideration for the promises set forth in the parties' written contracts.

29.     Further, on June 30, 2021, Dr. Mora signed an equipment finance agreement with Financial Partners Leasing Corporation for the PicoSure machine.

30.     In May 2022, Core Primary notified CynoSure that after making 12 months of full payments, Core Primary intended to invoke its rights under the Contractual Agreement. Specifically, Core Primary stated that it has not been able to justify the return on the cost of the PicoSure machine. Thus, pursuant to the Contractual Agreement, Core Primary requested that CynoSure (1) sell the PicoSure machine for Core Primary's benefit, for the remaining outstanding balance on Core Primary's obligation to Financial Partners Leasing Corporation in the amount of $193,012.76 or (2) sell the PicoSure equipment for the highest price possible and make up the difference to reach $193,012.76.

31.     CynoSure refused to fulfill its obligations under the Contractual Agreement and refused to sell the PicoSure machine.

32.     Further, CynoSure has argued that the Contractual Agreement is somehow invalid and that it will not honor any of its obligations in the Contractual Agreement.

# FIRST CAUSE OF ACTION

## (Violation of the Deceptive Trade Practices Act)

33.     CorePrimary incorporates by reference each and every allegation contained in the preceding paragraphs.

34.     The Texas Deceptive Trade Practices Consumer Protection Act ("DTPA") was enacted on May 21, 1973. The full text of the DTPA can be found starting at Section 17.41 of the Texas Business and Commerce Code. The primary purpose of the DTPA is to protect consumers against false, misleading, and deceptive business and insurance practices, unconscionable actions, and breaches of warranty. It does so by prohibiting certain acts and practices that tend to deceive and mislead consumers, including "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce…." *See* Section 17.46(a).

35.     Section 17.46(b)(12) of the DTPA defines the term "false, misleading, or deceptive acts or practices" to include the following: "representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law."

36.     Pursuant to Section 17.50(a) of the DTPA:

> A consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish:
>
> > (1) the use or employment by any person of a false, misleading, or deceptive act or practice that is:
> > (A) specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter; and

          (B) relied on by a consumer to the consumer's detriment.

37. Section 17.50(d) of the DTPA provides that "[e]ach consumer who prevails shall be awarded court costs and reasonable and necessary attorneys' fees."

38. CynoSure's actions, as described in paragraphs 5-32 above constitute violations of the DTPA including, but not limited to Section 17.46(b)(12).

39. Core Primary is a consumer, as defined under the DTPA, because it is a business with less than $25 million in assets.

40. Core Primary gave CynoSure notice of this claim as required by the DTPA in correspondence dated October 11, 2022. In the alternative, Core Primary is not required to provide written notice because that requirement is rendered impracticable by reason of the necessity of filing suit in order to prevent the expiration of the statute of limitations.

41. All of the above-described acts, omissions, and failures of CynoSure are a direct and proximate cause of Core Primary's damages. As a direct and proximate result of CynoSure's acts and conduct, Core Primary has been damaged in an amount not less than $193,012.76

42. Because CynoSure's actions and conduct were committed knowingly and intentionally, Core Primary is entitled to recover, in addition to all damages described herein, additional penalty damages, in an amount not to exceed three times such actual damages, for CynoSure having knowingly committed its conduct. Additionally, Core Primary is ultimately entitled to recover damages in an amount not to exceed three times the amount of actual damages due to CynoSure's having intentionally committed such conduct.

43. As a result of CynoSure's unconscionable, misleading, and deceptive actions and conduct, Core Primary has been forced to retain the legal services of the undersigned attorneys to

protect and pursue these claims on their behalf. Accordingly, Core Primary also seeks to recover its costs and reasonable and necessary attorneys' fees as permitted under Section 17.50(d) of the Texas Bus. & Comm. Code, as well as any other such damages to which Core Primary may show itself to be justly entitled at law and in equity.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

44. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs.

45. In addition to and/or in the alternative to any other cause of action, Core Primary seeks to recover damages from CynoSure for breach of contract.

46. The Contractual Agreement is a valid, enforceable contract.

47. Core Primary performed its obligations under the Contractual Agreement, or alternatively, was excused from performance due to CynoSure's failure and/or refusal to perform.

48. CynoSure breached the Contractual Agreement by failing and/or refusing, without excuse or justification, to fulfill its obligations under the Contractual Agreement, including but not limited to, by refusing and/or failing to (a) sell Core Primary's PicoSure machine, for Core Primary's benefit, for the remaining outstanding balance on Core Primary's obligation to its lender in the amount of $193,012.76; or (2) sell the PicoSure machine for the most it can get and fill the gap to $193,012.76.

49. Core Primary was injured, harmed, and incurred financial loss by way of CynoSure's above-described breaches in amounts to be determined at trial, but not less than $193,012.76.

## CONDITIONS PRECEDENT

50. All conditions precedent have been performed or have occurred as required by Rule 54 of the Texas Rules of Civil Procedure.

## JURY DEMAND

51. Core Primary demands a jury trial in this case pursuant to Rule 216 of the Texas Rules of Civil Procedure and has tendered the requisite fee.

## ATTORNEY FEES

52. Core Primary is entitled to recover reasonable and necessary attorneys' fees that are equitable and just under Section 38.001 of the Texas Civil Practice & Remedies Code and/or Section 17.50(d) of the DTPA.

## DAMAGES

53. This is an action to recover all damages provided by law and/or equity for the injuries and damages Core Primary sustained as a result of the acts and/or omissions of CynoSure and its, officers, agents, partners, servants, principals, vice principals, borrowed servants, employees and/or representatives.

## PRAYER

54. WHEREFORE, for the reasons set above, Core Primary respectfully requests that CynoSure be cited to appear herein and answer, and that upon trial of this matter, have judgment against CynoSure for:

a. Core Primary's economic damages—including statutory, special, compensatory, consequential, and incidental damages—in an amount not less than $193,012.76;

b. Trebled damages;

c. Attorney's fees and costs;

    d.    Pre-judgment and post-judgment interest; and

    e.    For such other relief, at law or in equity, to which Core Primary may be justly entitled.

DATED:  June 21, 2023

> Respectfully submitted,
>
> TONKON TORP LLP
>
> By: */s/ Danny Newman*
>     **Danny Newman**
>     Texas State Bar No. 24092896
>     danny.newman@tonkon.com
>     **Michael Willes**
>     (*pro hac vice* pending)
>     michael.willes@tonkon.com
>     **Antonija Krizanac**
>     (*pro hac vice* pending)
>     Antonija.Krizanac@tonkon.com
>     888 SW Fifth Ave., Suite 1600
>     Portland, OR 97204
>     Telephone: 503.802.2089
>     Facsimile: 503.274.8779
>
> ***Counsel for Plaintiff Core Primary Care, PLLC***

043233\00001\16301081v2